------------------------------------------------------

In re

    APRIL L. BULGER                                                BK 18-12185 CLB

                  Debtor                             <u>DECISION & ORDER</u>

------------------------------------------------------

                        Daniel E. Wisniewski, Esq.
                        286 Delaware Avenue, Suite B
                        Buffalo, NY 14202
                        Attorney for Debtor

                        Barclay Damon LLP
                        Beth Ann Bivona, Esq., of counsel
                        The Avant Building, Suite 1200
                        200 Delaware Avenue
                        Buffalo, New York 14202
                        Attorneys for Richard F. Bockrath and Mary Jane Bockrath

Bucki, Chief U.S.B.J., W.D.N.Y.

    The debtor objects to a proof of claim seeking reimbursement of legal fees that a mortgagee incurred after the commencement of this proceeding in Chapter 13. This dispute compels us to consider three questions. What is an appropriate standard of compensation for routine legal services? Is it reasonable to incur legal expenses in an amount far in excess of a disputed claim? May the debtor be charged with the legal fees that a creditor incurred in defending an exaggerated claim for moneys due and owing?

    In 2013, April L. Bulger and Raymond Albrecht purchased a residence at 186 Sunshine Drive in the Town of Amherst, New York, from Richard and Mary Jane Bockrath. As consideration for this transaction, Bulger and Albrecht delivered to the Bockraths a promissory note in the principal amount of $142,500. This note was then contemporaneously secured by a mortgage on the acquired property. The present controversy relates to a provision in the mortgage that in the event of a default, Bulger and Albrecht "also agree to pay reasonable attorneys fees."

    Starting in the fall of 2016, Bulger and Albrecht defaulted on payment of the note. As a consequence, Richard and Mary Jane Bockrath commenced an action to foreclosure the mortgage. During the course of the foreclosure proceeding, the parties engaged in settlement conferences as mandated under New York Law. *See* N.Y. C.P.L.R. 3408

(McKinney Supp. 2019).  On October 18, 2018, while the settlement process was still ongoing, April Burger filed a petition for relief under Chapter 13 of the Bankruptcy Code.

With her bankruptcy petition, April Bulger filed a Chapter 13 plan which proposed to cure mortgage arrearages in the amount of $29,000.  The Bockraths responded in two ways.  On November 14, 2018, they submitted a proof of claim ("the November 14 Proof of Claim") asserting pre-petition arrears of $37,188.93.  Then on December 6, the mortgagees filed an objection to confirmation, in which they challenged the plan on the basis that it failed to propose payment of the full amount listed in the proof of claim.

Bankruptcy Rule 3001(f) states that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."  With or without a specific objection to a Chapter 13 plan, the filing of a proof of claim will compel the debtor either to challenge the proof of claim or to conform her plan to address payment of the stated claim.  Here, the debtor chose to object to the claim as filed.

The November 14 Proof of Claim alleged arrears of $37,188.93, which included pre-petition legal fees of $11,598.  The debtor's objection included an assertion that a significant portion of the legal fees violated Rule 3408(h) of the New York Civil Practice Law and Rules.  This subdivision states that "[a] party to a foreclosure action may not charge, impose, or otherwise require payment from the other party for any cost, including but not limited to attorneys' fees, for appearance at or participation in the settlement conference."  Although the creditors represented that the legal charges did not include attendance at any mandated settlement conference, the debtors viewed the statute more broadly as prohibiting charges for time that relates to any settlement negotiations.

This Court never decided the merits of the November 14 Proof of Claim, inasmuch as the parties ultimately settled the objection.  Pursuant to a stipulation dated March 27, 2019, the pre-petition arrears were set at $34,313.24, an amount $2,875.69 less than what the creditor had originally demanded.  However, the stipulation also provided that the "Bockraths will present any claim for post-petition attorneys' fees in a filed proof of claim within 30 days of entry of this Stipulation . . . ."  Accordingly, on April 23, 2019, the Bockraths filed an administrative claim for post-petition legal services in the amount of $12,387.  The debtor now objects.  Although she acknowledges a contractual

obligation to pay reasonable legal fees, Bulger asserts that the amount of the claim is excessive and unreasonable.  Additionally, she advises that her plan would no longer be feasible if she were required to pay an administrative obligation for the stated amount.

"As a general rule, the parties to any litigated matter must each bear the cost of their own legal representation." *In re Wasson*, 402 B.R. 561, 565 (Bkrtcy. W.D.N.Y. 2009).  New York recognizes an exception, however, "when the mortgage itself authorizes the recovery of legal fees."  *Id.*  Even then, any such recovery of legal expenses "requires proof of the reasonableness of compensation." *Id.* at 566.  *See also In re Amherst Orthopedic Associates, P.C.*, 355 B.R. 420 (Bkrtcy. W.D.N.Y. 2006).

In support of the claim for legal fees, counsel has submitted billing statements that contain a detailed statement of time entries with a full description of services rendered.  Unlike applications for the allowance of fees to attorneys appointed to represent a debtor in possession, no project billing requirements apply with regard to services rendered to a creditor.  *See* United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330, 28 C.F.R. Pt. 58, App. A, § (b)(4)(iii).  Nonetheless, the Court took upon itself the task of reviewing the time records.  The purported services generally fall into three categories.  It appears that attorneys devoted more than $4,000 of time to the preparation of a proof of claim and to the creditor's objection to plan confirmation.  Approximately $400 of time was used to address issues of post-petition default.  Most significantly, counsel devoted more than $7,500 of time in responding to and negotiating a resolution of the debtor's objection to the proof of claim.

### A.  Proof of Claim and Objection to Plan Confirmation:

For professionals employed under 11 U.S.C. §§ 327 and 1103, this Court may award reasonable compensation as defined by 11 U.S.C. § 330.  Because creditors may choose their own counsel without approval from this Court, section 330 does not control the allowance of fees to the attorneys for the Bockraths.  Nonetheless, the Bankruptcy Code provides some guidance with regard to an appropriate standard of reasonableness.  *See* 11 U.S.C. § 330(a)(3).  This Court agrees with the statute's underlying principles, including its statement that the reasonableness of an attorney's fee depends not only on billing rates and the amount of time spent on a project, but also on the nature, extent and value of the services provided.  In particular, the determination of reasonableness

should appropriately consider "the customary compensation charged by comparably skilled practitioners."  11 U.S.C. § 330(a)(3)(F).

The Federal National Mortgage Association (an entity often referred to as "Fannie Mae") publishes a table listing the maximum attorney fees that it will allow for legal work related to bankruptcy proceedings.  As issued in 2018 with regard to cases in Chapter 13, this table allows a maximum of $650 for legal services rendered in the preparation of a claim and review of a proposed plan, and a maximum additional sum of $500 for the prosecution of an objection to the debtor's plan.  *See* http://www.fanniemae.com/singlefamily/servicing.  Recognizing the significance of the Association's presence in the mortgage industry, we find that the stated fees fairly represent a customary level of compensation for the designated services.

Pursuant to the terms of their mortgage, the debtor and her co-borrower agreed only to pay reasonable legal fees.  They did not commit to reimburse the Bockraths for the value of work that is typically in the nature of mortgage servicing.  Indeed, the Federal National Mortgage Association recognizes this distinction in its fee guidelines, which state that the preparation of a proof of claim includes the process of obtaining information and documentation from the mortgage servicer.  Here, because the Bockraths are not an institutional lender, they had no servicer but instead assigned its functions to counsel.  For example, one of the first post-petition time entries references a "calculation of amount due on mortgage debt."  The Court does not mean to suggest that counsel has presented an excessive bill to its client for work related to plan review, claim preparation and the plan objection.  Rather, we merely hold that reasonable legal fees constitute only a portion of the purported charges.

The reasonableness of a legal fee depends upon the facts and circumstances of a situation.  For example, in other cases, we have denied a mortgagee's claim for a charge related to the preparation of a proof of claim.  *In re Wasson*, 402 B.R. 561, 567 (Bkrtcy W.D.N.Y. 2009).  In many instances, a proof of claim will fully protect the interests of the creditor, without the need for filing a separate plan objection.  Arguably, however, the present case is more complex.  Taking into account all relevant factors, the Court finds that a reasonable legal fee would here total no more than the maximum fee allowance of the Federal National Mortgage Association for preparation of a proof of claim and an objection to plan confirmation.  Accordingly for these services, the debtor is appropriately charged legal fees in the amount of $1,150.

**B. Post-petition Defaults:**

In the plan filed with her bankruptcy petition, the debtor indicated that she intended to "maintain contractual installment payments on the secured claims." When the first post-petition payment became due, April Bulger paid $1,105 on account of a monthly payment allegedly in the amount of $1,135.12. Richard and Mary Jane Bockrath then asked counsel to address the underpayment. Time records appear to indicate that the attorneys spent almost $400 of time to deal with the purported shortfall of $30.12.

Institutional lenders will generally create a bookkeeping entry to address problems of a relatively slight shortfall in payments. With its recorded mortgage, the lender can ultimately demand a residual payment as a condition for issuance of a discharge. Rarely do counsel become involved. Although the mortgagees here are individuals, the same rationale applies for limiting the involvement of counsel. If clients so desire, they can use counsel to collect a charge that is less than ten percent of the resulting legal fee. However, such a fee is not the type of reasonable expense that can be imposed upon the borrowers under the terms of their mortgage.

**C. Response to Claim Objection:**

The attorneys for Richard and Mary Jane Bockrath seek reimbursement for more than $7,500 of time spent in responding to the debtor's objection to a proof of claim. No one disputes the quality or quantity of representation. Nonetheless, we deny reimbursement for two independent reasons.

First, the Bockraths ultimately agreed to reduce their claim by $2,875.69. Litigants will enter into settlements for many reasons. At times, the resulting compromise represents the acknowledgment of a valid objection. But the settlement might also reflect uncertainty regarding ultimate results or a desire to avoid further legal expense. In the present instance, the Court knows only that the legal fee component of the November 14 Proof of Claim has been reduced by almost 25 %, from $11,598 to $8,722.31. No matter what considerations may have motivated the parties to so stipulate, the Court accepts their agreement that the proof of claim was excessive. Because the claim was excessive, the creditors cannot reasonably impose upon the debtor the legal cost of its defense. Otherwise, the commitment to pay reasonable legal fees becomes instead an impairment to justice. Essentially, the supplemental proof of claim asks the debtor to pay more than $7,500 of legal fees as the price for correcting

an overcharge of $2,875.69. This disparity renders these post-petition legal fees unreasonable.

A second reason to deny reimbursement derives from Rule 3408 of the New York Civil Practice Law and Rules. "A party to a foreclosure action may not charge, impose, or otherwise require payment from the other party for any cost, including but not limited to attorneys' fees, for appearance at or participation in the settlement conference." N.Y. C.P.L.R. 3408(h)(McKinney Supp. 2019). The prohibition against imposing "any cost" is broad and suffices to prohibit not only the time of participation in a settlement conference, but also any time spent in trying to collect such non-transferable costs. Having reduced their claim for attorneys' fees related to the statutorily mandated settlement conference, the Bockraths must similarly forego the cost of their failed effort to recover those fees.

## Conclusion

For the reasons stated herein, the claim of Richard and Mary Jane Bockrath for reimbursement of post-petition legal expenses shall be allowed only in the amount of $1,150, and is otherwise disallowed.

So ordered.

Dated: September 16, 2019          /s/ Carl L. Bucki_____
       Buffalo, New York           Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.